IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| SUSAN ELAINE YEAGER, | ) | |
| | ) | |
| | ) | 1:21-CV-00227-RAL |
| Petitioner | ) | |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| SUPERINTENDENT OVERMYER, | ) | |
| DISTRICT ATTORNEY OF WARREN | ) | MEMORANDUM OPINION ON |
| COUNTY,  ATTORNEY GENERAL OF | ) | RESPONDENTS' MOTION TO DISMISS |
| THE COMMONWEALTH OF PA., | ) | |
| | ) | ECF NO. 13 |
| Respondents | ) | |
| | ) | |

Petitioner Susan Elaine Yeager ("Yeager" or "Petitioner") is an inmate in the custody of

the Pennsylvania Department of Corrections at its State Correctional Institution at Cambridge

Springs ("SCI-Cambridge Springs").  On September 15, 2021, she filed the pending petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking her criminal conviction in the

Court of Common Pleas of Warren County, Pennsylvania.[1]  *See generally*, ECF No. 7.

Respondents have moved to dismiss the petition as barred by the statute of limitations imposed

by the Anti-Terrorism and Effective Death Penalty Act of 1996.  ECF No. 13.  Yeager has filed a

Response in opposition to the motion.  ECF No. 22.

For the reasons set forth below, Yeager's petition will be dismissed as untimely.[2]  *See* 28

U.S.C. § 2244(d).

---

[1] Although the federal habeas statutes use the term "application," the Court uses the word "petition" interchangeably with "application" as does the United States Supreme Court in its various opinions. *See, e.g., Crabb v. Eckard*, 2015 WL 4879071, at *3 n.3 (M.D. Pa. Aug. 14, 2015).

[2] Pursuant to 28 U.S.C. § 636(c)(1), the Parties have consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. *See* ECF Nos. 2, 16.

I.      Background

On May 14, 2009, Yeager was found guilty of the first degree murder of her husband. On June 16, 2009, she was sentenced to life in prison, without parole.[3] She appealed to the Pennsylvania Superior Court, which affirmed her conviction and sentence. *See Commonwealth v. Yeager*, No. 1766 WDA 2009, 11 A.3d 1025 (Table) (unpublished memorandum at 1-2 (Pa. Super. filed August 13, 2010)). Yeager sought re-argument in the Superior Court, which the court denied on October 14, 2010. She did not file an application for allowance of appeal to the Supreme Court of Pennsylvania.

On January 17, 2011, Yeager, acting *pro se*, filed a petition for post-conviction relief pursuant to the Pennsylvania Post-Conviction Relief Act, 42 Pa. C.S.A. § 9541, *et seq*. ("PCRA") in the Court of Common Pleas of Warren County.[4] Counsel was appointed and an amended petition was filed. The PCRA court held a hearing on the petition and, on May 23, 2011, denied her petition. On June 14, 2011, Yeager filed a notice of appeal to the Superior Court. The Superior Court affirmed the decision of the PCRA court on March 9, 2012. She did not seek allowance of appeal to the Supreme Court of Pennsylvania.

On February 9, 2019, Yeager filed a second PCRA petition together with a motion seeking production from the Commonwealth of DNA and biological sample evidence. On March 9, 2019, the PCRA court announced its intention to dismiss the petition without a hearing.

---

[3] Here, the Court takes judicial notice of the state court's trial and appellate dockets in criminal case CP-62-CR-000055-2009, which is available to the public online at https://ujsportal.pacourts.us (last visited on February 21, 22). *See, e.g., Burley v. Parra*, 2021 WL 4594674, at *1 (W.D. Pa. Oct. 6, 2021). Direct citation to the state court docket will be omitted, unless done for particular emphasis.

[4] The Pennsylvania Courts of Common Pleas have original jurisdiction over PCRA petitions. 42 Pa. Cons. Stat. Ann. § 9545(a). PCRA dispositions from the Courts of Common Pleas are appealable to the Pennsylvania Superior Courts. *See, e.g., Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007). Herein, the Court will refer to the Court of Common Pleas that heard Yeager's PCRA petitions as the "PCRA court." *See, e.g., Boyer v. Houtzdale*, 620 Fed. Appx. 118, 121, n.2 (3d Cir. Aug. 4, 2015).

*See, e.g., Commonwealth v. Mohiuddin*, 2022 WL 439250, at \*1 (Pa. Super. Ct. Feb. 14, 2022) (Table) (citing Pennsylvania Rule of Criminal Procedure 907). Yeager filed a response in opposition and requested reconsideration. The PCRA court denied the request for reconsideration on April 11, 2019. Yeager then appealed to the Superior Court.

Initially, the Superior Court remanded the matter to the PCRA court, instructing that a final order disposing of Yeager's PCRA petition be entered. *See Commonwealth v. Yeager*, 2019 WL 6118404, at \*2 (Pa. Super. Ct. Nov. 18, 2019). The PCRA court entered an order denying Yeager's second PCRA petition as untimely on November 18, 2019. As noted by the Respondents, this Order was not immediately served on the parties. The PCRA court's order was finally transmitted on December 31, 2019. The transmittal included a copy of the PCRA court's November 18th order and explained that the order had not been properly docketed due to a "clerical error." Yeager was notified that she had thirty days to file an appeal. She did so on January 16, 2020. Given the clerical error, the Superior Court declined to quash her appeal as untimely. *See Commonwealth v. Yeager*, 2020 WL 4192739, at \*1 (Pa. Super. Ct. July 21, 2020) (unpublished memorandum).

The Superior Court affirmed the PCRA court's dismissal of Yeager's second PCRA petition on July 21, 2020. *Id.* On April 7, 2021, Yeager filed an application for allowance of appeal to the Supreme Court of Pennsylvania, *nunc pro tunc*, seeking to appeal the Superior Court's July 21, 2020, decision. The Supreme Court denied her application on June 11, 2021. Yeager filed the instant petition for a writ of habeas corpus with this Court on August 9, 2021, the date she signed it. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (holding that a pro se prisoner's submission is generally deemed filed "at the time [the inmate] delivered it to the prison authorities for forwarding to the county clerk."). *See also Ferrara v. Mason*, 2021 WL

3

6051440, at *2 (W.D. Pa. Dec. 20, 2021) (holding habeas petition was filed on the date the petitioner signed it).

II.     Standard of Decision and Discussion

The habeas statute directs federal courts to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See* 28 U.S.C. § 2244(d) (1). Specifically, a petition for habeas corpus relief pursuant to § 2254 is subject to the following statute of limitations:

> (1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); *see also Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999).  Under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

Yeager was sentenced to life in prison on June 16, 2009. Her judgment became final on

November 13, 2010, when the time expired for her to file a petition for allowance of appeal to

the Pennsylvania Supreme Court expired.[5] *See, e.g., Pulliam v. Clark*, 2018 WL 6267762, at *4

(W.D. Pa. Nov. 30, 2018) (citing Pennsylvania Rule of Appellate Procedure 1113(a)(1) and

*Swartz v. Meyers*, 204 F.3d 420-21 (3d Cir. 2000)). The one-year AEDPA statute of limitations

period commenced on the first day following that date (November 14, 2010), making Yeager's

petition for habeas relief due on or before November 14, 2011. *See* Federal Rule of Civil

Procedure 6(a)(1). Therefore, the instant petition, filed on November 15, 2021, is untimely by

almost a decade.

But the one-year limitations period is not "an inflexible rule requiring dismissal whenever

ADEPA's one-year clock has run." *Day v. McDonough*, 547 U.S. 198, 208 (2006). "Instead,

the limitations period is subject to both statutory and equitable tolling." *Jenkins v.*

*Superintendent of Laurel Highlands*, 705 F.3d 80, 85 (3d Cir. 2013).

A.    Statutory Tolling

Because Yeager sought post-conviction relief in the state courts, she may benefit from

statutory tolling. AEDPA tolls the one-year statute of limitations "during which a properly filed

application for state post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The Court of Appeals for the Third

Circuit has defined "pending" to mean the time "during which a petitioner may seek

---

[5] Here, the Court uses the date that the Superior Court denied Yeager's motion for re-argument to determine the date her judgment became final. Under Pennsylvania law, Yeager had thirty days to move for a petition for allowance of appeal from the date her motion for re-argument was denied. In Pennsylvania, "[t]he time for filing a petition for allowance of appeal runs from the date of the entry of the order denying the application for re-argument. Any petition for allowance of appeal that is filed before the entry of the order denying an application for re-argument has no effect. If such a petition for allowance of appeal is filed and subsequently the application for re-argument is denied, petitioner must again file a new petition for allowance of appeal. *See* 20 West's Pa. Prac., Appellate Practice § 1113:7 (Effect of timely application for re-argument—Denial of Application for Re-argument and Start of 30 day appeal period).

discretionary state court review, whether or not such review is sought." *Swartz*, 204 F.3d at 417. A PCRA petition, "by definition," remains pending "until the application has achieved final resolution through the State's post-conviction procedures." *Martin v. Administrator, New Jersey State Prison*, 23 F.3 263, 268 (3d Cir. 2022) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)).

Yeager filed two petitions for post-conviction relief in the state court, thereby creating two time periods potentially eligible for statutory tolling. She filed her first petition for post-conviction relief on January 17, 2011. Sixty-five days had passed on the one-year AEDPA clock by that date. Her petition remained pending until March 9, 2012, when the Superior Court affirmed the PCRA court's denial of Yeager's claims. Thus, when the clock began to run again on March 10, 2012, three-hundred days remained for Yeager to file a timely habeas petition. Those remaining three-hundred days expired on Friday, January 4, 2013. No petition for habeas corpus relief was filed by that date.

Indeed, nothing appears on the state court docket until February 5, 2019, when several pro se filings were docketed in Yeager's case. These included a motion to compel the production of DNA and biological sample evidence, a motion for restoration of appellate rights *nunc pro tunc*, and a second petition for post-conviction relief. The PCRA court denied Yeager's second post-conviction petition as untimely, and the Superior Court agreed, holding that Yeager had failed to prove an applicable exception to the PCRA timeliness requirements. *See Commonwealth v. Yeager*, 239 A.2d 87, at *2. Because the state court rejected Yeager's second PCRA petition as untimely—a determination that is binding on this court—it was not "properly filed" and she is, therefore, not entitled to any additional statutory tolling under § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *see also McManus v. Giroux*,

6

2013 WL 6118694, at *2 (W.D. Pa. Nov. 21, 2013) (citing *Swarthout v. Cooke*, 562 U.S. 216 (2011)).  Thus, despite the benefit of some statutory tolling, Yeager failed to file a timely petition.  Therefore, absent the application of any equitable tolling, Yeager's petition remains time-barred.

      B.     Equitable Tolling

      The one-year statute of limitations mandated by Section 2244(d)(1) is also subject to equitable tolling.  *See Martin*, 23 F.4th at 272 (citing *Holland v. Florida*, 560 U.S. 631, 645-49 (2010)).  Federal courts are to use equitable tolling sparingly, and do so "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice."  *Id.* (quoting *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005)).  Further, the decision to equitably toll AEDPA's statute of limitations period must be made on a case by case basis.  *Id.*

      Generally, federal courts employ a two-step test in determining whether to utilize equitable tolling.  That is, a petitioner bears the burden of establishing that she (1) has been pursuing her rights diligently and (2) that some extraordinary circumstance stood in her way and prevented a timely filing of her habeas petition.  *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418).  This inquiry is conjunctive.  *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) ("This conjunctive standard requires showing *both* elements before we will permit tolling.") (emphasis in original).

      It is Yeager's burden to demonstrate that she had been pursuing her rights "with reasonable diligence in the circumstances."  *Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005); *accord Holland*, 560 U.S. at 653.  This is a fact-specific inquiry and "depends on the circumstances faced by the particular petitioner."  *Martin*, 23 F.4th at 273 (citations omitted).  This means that although a petitioner "need not have acted with maximum feasible diligence,"

she also cannot have been "sleeping on [her] rights." *Id.* (citations omitted).  A determination of

reasonable diligence includes not only a petitioner's filing for federal habeas relief, but also

"extends to the steps the petitioner takes to exhaust available state court remedies." *Id.*

Although "Herculean efforts," are not expected, "a lack of legal knowledge or legal training does

not alone justify equitable tolling." *Id.*, (quoting *Ross v. Varano*, 712 F.3d 784, 799-800, 802 (3d

Cir. 2013)).

Here, Yeager has failed to establish that she pursued her rights with reasonable diligence.

As noted above, the Superior Court affirmed the denial of her first PCRA petition on March 9,

2012.  Yeager took no action whatsoever until she filed her second PCRA petition on February 5,

2019, almost seven years later.  This extraordinary timespan certainly suggests that Yeager was

"sleeping on her rights."  Indeed, the Court of Appeals recently concluded that a petitioner who

waited nine months to inquire about the status of his case was similarly quiescent. *See Martin*,

23 F.4th at 274.

Yeager offers some explanations to justify her inordinate delay.  None of them implicate

equitable tolling considerations, however.  First, she contends that, back in 2011, her PCRA

attorney told her that she "needs to exhaust state remedies by filing an allowance of appeals to

the Supreme Court." ECF No. 22, p. 2, ¶ 7.  In Pennsylvania, direct criminal appellants and

PCRA petitioners need not file petitions for allowance of appeal to the Supreme Court of

Pennsylvania in order for their claims to be considered exhausted. *See Boyd v. Waymart*, 579

F.3d 330, 368 (3d Cir. 2009) (citing Supreme Court of Pennsylvania's order in *In re: Exhaustion

of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial

Administration Docket No. 1.)).  Thus, that PCRA counsel did not tell her she needed to file a

petition for allowance of appeal does not present a reason to invoke equitable tolling for purposes of federal habeas review.

Second, Yeager faults her first PCRA counsel for not informing her of the "timeframe for filing a Habeas Corpus appeal." ECF No. 22, p. 2, ¶ 7. Along this same line, she also contends that she is entitled to equitable tolling due to her inability to obtain and review a copy of the AEDPA statute. *Id.*, at ¶ 9. Yeager also argues that her lack of diligence should be excused because she is a "lay person with no assistance or knowledge" of the law. *Id.*, ¶ 12. Such lack of training in the law is insufficient to invoke equitable tolling, however. *See Jones v. Morton*, 195 F.3d 153, 160 (3d Cir. 1999) (equitable tolling not applicable where basis for untimely filing was petitioner's misunderstanding of AEDPA's statute of limitations); *School Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981) ("[i]gnorance of the law is not enough to invoke equitable tolling"). That is, "it is well established that a petitioner's lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799-800 (citations omitted).

Yeager also relates that she learned about the one-year federal limitations period in 2017, when she was able to utilize the law library at SCI-Cambridge Springs. ECF No. 22, p. 3, ¶¶ 14-15. However, despite that facility "being equipped with resources and aides who instructed Petitioner on how to use Lexis Nexis," she did not file her petition with this Court until September 15, 2021. *See* ECF No. 7. Thus, even if Yeager began to act with appropriate diligence upon her arrival at SCI-Cambridge Springs in 2017, that does not explain or excuse her lack of diligence in the preceding five years.

Yeager argues that she wrote to her PCRA counsel requesting "transcripts, discovery, and documents in order to pursue her appeals," but did not receive a response. ECF No. 22, p. 3,

¶¶ 11, 13. She does not provide a date for these communications nor any evidence establishing their frequency, although she does indicate that she ultimately received this information from PCRA counsel on May 9, 2018. *Id.*, ¶ 17. Still, she admits to learning of AEDPA's one-year statute of limitations a year earlier, but still did not undertake a federal filing until three years later. Thus, this Court cannot conclude that she acted diligently in pursing her legal remedies.

To the extent Yeager is arguing that her PCRA attorney abandoned her, her contention bleeds into the second equitable tolling consideration: whether some extraordinary circumstance stood in the way of her making a timely filing in federal court. *See Scott v. Zappala*, 2021 WL 4864448, at *12 (W.D. Pa. Oct. 19, 2021) (citing *Wallace v. Mahanoy*, 2 F.4th 133, 143-44 (3d Cir. 2021)). "When an attorney abandons his client without notice, and thereby occasions the default," that can be an extraordinary circumstance for purposes of equitable tolling. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Ross*, 712 F.3d at 798. The Respondents point out that Yeager's PCRA counsel, Henry L. Borger, Esq., filed a motion to withdraw his representation on March 20, 2012, and a motion seeking fees on August 23, 2012. See ECF No. 13, p. 6, ¶ 16. Thus, they argue, he did not abandon Yeager but instead followed the proper procedure to end his representation. *Id.* The state court granted Attorney Borger's motion for fees on August 27, 2013. Although the state court docket does not indicate whether it granted counsel's motion to withdraw, the filing of his motion gave Yeager notice that he no longer wished to represent her. Yeager's abandonment allegation falls well short of those found to constitute an extraordinary circumstance in other cases. *See, e.g., Fisher v. McGinley*, 2016 WL 6995045, at *1, n.1 (E.D. Pa. Nov. 29, 2016); *Holland*, 560 U.S. at 653 (finding the petitioner acted with reasonable diligence where he "not only wrote his attorney numerous letters seeking crucial information and providing direction[,] [but] also repeatedly contacted the state courts,

10

their clerks, and the Florida State Bar Association in an effort to have [his counsel]—the central impediment to the pursuit of his legal remedy—removed from his case"); *Ross*, 712 F.3d at 802 (finding reasonable diligence where the petitioner "regularly and repeatedly ... attempted to pursue his appeal through letters and phone calls to his attorney and to the courts" but was misled as to the status of his appeal by his attorney and by the trial court).

And, in any event, even were the Court to assume that Yeager's allegations of abandonment were sufficient to satisfy the extraordinary circumstances prong, she still must show that she was pursing her rights diligently. *See, e.g., Carr v. Kaufmann*, 2021 WL 5435600, at *3 (E.D. Pa. Oct. 1, 2021); *Finley v. Pennsylvania*, 2015 WL 2417442, at *3 (E.D. Pa. May 20, 2015) (assuming counsel's abandonment, court held equitable tolling unavailable to petitioner because he did not exercise reasonable diligence in filing his habeas petition). She has not done so. Thus, because equitable tolling requires a conjunctive showing, Yeager cannot benefit from its application. *See Holland*, 560 U.S. at 649. As concluded above, Yeager failed to exercise reasonable diligence to preserve her rights in this Court. She cannot, therefore, benefit from any equitable tolling and her habeas petition is time-barred.

C.     Actual Innocence

A petitioner's claim that she is innocent of the charges upon which she was convicted may also toll the one-year limitation period. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013). Although Yeager does not specifically raise a claim of innocence as a ground for relief in her petition, she does make a passing reference to her "actual innocence" in a section of her petition when discussing its timeliness. *See* ECF No. 7, p. 20. Her response in opposition to the motion to dismiss also references her "actual innocence." *See* ECF No. 22, p. 7, ¶ 31 ("the evidence Petitioner moved for could prove actual innocence."). Although it is unclear that Yeager has

11

raised such a claim, out of an abundance of caution, the Court will review whether such a claim would entitle her to tolling.

The actual innocence exception is characterized as a fundamental miscarriage of justice exception that is designed to ensure that federal constitutional errors do not result in the incarceration of innocent persons. *McQuiggin*, 569 U.S. at 383. To demonstrate a fundamental miscarriage of justice, Yeager must show that she is actually innocent of the crime by presenting new evidence of innocence. *See Keller v. Larkins*, 251 F.2d 405, 415-16 (3d Cir. 2001). This means she must supplement her claim with new, reliable evidence of actual or factual innocence that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 514 U.S. 298, 327 (1995). A finding of actual innocence in absence of new evidence is extremely rare given that the exception itself "will apply only in extraordinary cases." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000).

Here, Yeager has not pointed to any new evidence or even factual allegations to establish her innocence of the crime for which she was convicted. Instead, she states only that the DNA evidence she asked for post-conviction "could prove actual innocence." ECF No. 22, p. 7, ¶ 31. This is little more than speculation, by which Yeager acknowledges that she has no idea what the results of a DNA test might yield. This speculation is not new evidence. *See, e.g., Brunson v. Atty. Gen. of New Jersey*, 2021 WL 4623296, at *3 (D.N.J. Oct 7, 2021) (holding that speculative nature of assertions did not provide new, reliable evidence for claim of actual innocence). That is to say, Yeager's "new evidence" is really just speculation about what might be shown if certain tests were performed on the physical evidence. Such speculation is insufficient to meet the heavy burden of *Schulp. See, e.g., O'Boyle v. Ortiz*, 242 Fed. Appx. 529, 530-31 (10th Cir. 2007).

12

Accordingly, it cannot be said that it is more likely than not that no reasonable juror would have convicted her. *See Bruce v. Warden, Lewisburg USP*, 868 F.3d 170, 184 (3d Cir. 2017). Thus, any actual innocence claim she had raised would not toll the statute of limitations.

III.    No Certificate of Appealability Will Issue

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)). Here, there is no basis for the issuance of a COA and accordingly, none will issue.

"The denial of a certificate of appealability does not prevent [Petitioner] from appealing the order dismissing his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals." *Martz v. Mooney*, 2016 WL 2347189 (M.D. Pa. May 4, 2016). *See also* Fed. R. App. P. 22(b)(1), (2).

IV.    Conclusion

As explained, Yeager's petition is untimely and cannot benefit from statutory or equitable tolling. Nor does any purported claim of actual innocence save her petition. Therefore, the Respondents' motion to dismiss will be GRANTED. As separate order will issue.

Entered this 10th day of March, 2022.

RICHARD A. LANZILLO
United States Magistrate Judge